1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  KARRIE MONOHON,

10                              Plaintiff,                    No.  C06-1050Z

11  v.

                                                            ORDER

12  JOHN E. POTTER, Postmaster General,
    United States Postal Service,

13                              Defendant.

14

15         This matter comes before the Court on Motion to Dismiss, docket no. 15, by

16  Defendant John E. Potter, in his official capacity as Postmaster General of the United States.

17  Plaintiff Karrie Monohon has been an employee of the United States Postal Service

18  ("USPS") since 1984.  See First Am. Compl., docket no. 4, ¶ 4.1.[1]  Plaintiff held the position

19  of Postal Inspector with the United States Postal Inspection Service beginning in January

20  1989.  Id.  In October 1995, Ms. Monohon became Team Leader at the Inspection Service's

21  Anchorage office.  Id. ¶ 4.4.  In August 1999, Ms. Monohon was transferred to the Tukwila

22  office and assumed the duties of Team Leader, Internal Crimes.  Id. ¶ 4.5.  Ms. Monohon

23  remained Team Leader of the Internal Crimes Team through October 22, 2004, when she

24  was transferred to Division Headquarters in Seattle.  Id. ¶¶ 4.7, 4.13.

25

26         [1] Plaintiff's First Amended Complaint includes two sections under the heading "IV."  The
    first is titled "IV.  Exhaustion," see First Am. Compl., docket no. 4, at 3-4 (¶¶ 4.1 – 4.12), and
    the second, "IV.  Statement of Facts."  Id. at 5-20 (¶¶ 4.1 – 4.67).

ORDER -  1

On October 22, 2004, Ms. Monohon was instructed to clear out her Tukwila office as a result of her transfer to Division Headquarters in Seattle. Id. ¶ 4.12.  Ms. Monohon was replaced as Team Leader by Brad Kleinknecht. Id. ¶ 4.11.  Ms. Monohon characterizes Mr. Kleinknecht as a "less qualified male team leader," id. ¶ 4.11, and claims he was less qualified because he had been a Team Leader for only four months, whereas Ms. Monohon had ten years experience as a Team Leader. Id. ¶ 4.14.  When Ms. Monohon reported to her new assignment, there was no office or parking space assigned for her use. Id. ¶ 4.13.  In addition, Ms. Monohon alleges that she endured a hostile work environment at Seattle Division Headquarters.

Ms. Monohon worked at the Seattle Division Headquarters from late 2004 until approximately March of 2005, when she sought and obtained a position as Criminal Investigator at the Office of Inspector General ("OIG"). Id. ¶ 4.32.  After beginning her new position at OIG, Ms. Monohon learned that her government credit card had been canceled. A government credit card is required for the position of Criminal Investigator.  Ms. Monohon applied for reinstatement with the Inspection Service.  Her application was denied. Id. ¶¶ 4.37, 4.39, 4.41.  In November of 2005, Ms. Monohon was removed from her position at the OIG because she did not have a government credit card. Id. ¶ 4.32. When plaintiff was removed from the Criminal Investigator position, OIG offered her a position as an Investigative Analyst.  Plaintiff accepted this position and has relocated to Washington D.C. Id. ¶¶ 4.45-4.46.

**1.     First EEO Complaint.**

On October 26, 2004, as a result of her transfer to Seattle Division Headquarters, Ms. Monohon initiated her first EEO complaint.  With regard to specific discriminatory actions, Ms. Monohon cited the adverse employment action occurring on October 22, 2004 (i.e., the reassignment). See Cohen Decl., docket no. 16, Ex. A (Information for Pre-Complaint Counseling).  Ms. Monohon characterizes the transfer and related actions as the adverse

1   actions which "triggered" her EEO Complaint. <u>See</u> First Am. Compl., docket no. 4, ¶ 4.11.

2   In requesting a resolution regarding her EEO Complaint, Ms. Monohon noted that "also there

3   is a hostile work environment against me and subsequently my team members."  Cohen

4   Decl., docket no. 16, Ex. A at 11 (Information for Pre-Complaint Counseling).  Ms.

5   Monohon's Formal Complaint for sex discrimination was signed on January 1, 2005. <u>Id.</u>,

6   Ex. C (EEO Complaint).  The Formal Complaint described the discriminatory action as the

7   reassignment; the remedy sought included a "[f]ull investigation of discriminatory and

8   hostile work environment in the Seattle Division." <u>Id.</u>

9       On January 19, 2005, the Postal Service Senior EEO Complaints Investigator, Kuldip

10  Kang, advised Ms. Monohon that her complaint had been accepted for investigation.  Based

11  on the Formal Complaint, the USPS informed Ms. Monohon that its investigation would

12  include one issue only:

13      You alleged discrimination based on sex (Female), when on October 22, 2004, you
        were told to vacate your office and move to Division Headquarters.

14
    Cohen Decl., docket no. 16, Ex. D (January 19, 2005 Kang Letter).  Ms. Monohon did not
15
    subsequently request a broader scope for the investigation, and an investigation of the events
16
    of October 22, 2004 ensued.
17
        On April 18, 2005, the EEO investigator notified Plaintiff that the investigation had
18
    been completed, and sent a copy of the investigative file. <u>Id.</u>, Ex. E.  The letter also outlined
19
    Plaintiff's right to request a hearing before an administrative law judge ("ALJ") within thirty
20
    days, or to request a final agency decision without a hearing. <u>Id.</u>  Plaintiff requested a
21
    hearing before an ALJ on May 20, 2005. <u>See</u> Cohen Decl., Ex. F.  On February 24, 2006,
22
    the ALJ held a status conference and informed the parties of her intent to dismiss the
23
    Complaint without a hearing. <u>See</u> First Am. Compl., docket no. 4, ¶ 4.2.  The ALJ had not
24
    issued a written decision, and there was no final agency decision, when this action was filed
25
    on July 25, 2006. <u>Id.</u> ¶ 4.3.
26

ORDER - 3

1    **2.    Second EEO Complaint.**

2         On December 7, 2005, Plaintiff again requested pre-complaint counseling, alleging

3    sex discrimination and retaliation in the denial of her reinstatement with the Inspection

4    Service.  Cohen Decl., docket no. 16, Ex. G.  Ms. Monohon now alleges that her supervisors

5    in the Inspection Service caused the cancellation of her government credit card, which

6    resulted in her removal from the position at OIG.  See First Am. Compl., docket no. 4, ¶ 4.5.

7    The basis for the claim of retaliation was Ms. Monohon's filing of the First EEO Complaint.

8    See Cohen Decl., docket no. 16, Ex. G.

9         By notice dated March 10, 2006, Plaintiff was advised in writing of her right to file a

10   formal EEO complaint with regard to her retaliation claim.  Id., Ex. H.  The formal

11   complaint was due 15 calendar days from receipt of the notice.  Id.  Plaintiff filed the second

12   EEO complaint, alleging gender discrimination and retaliation, on April, 8, 2006.  Id., Ex. I.

13   Plaintiff described the discrimination and retaliation as follows:

14            I learned for the first time during a deposition of William Morris on Dec. 13, 2005,
             that Morris recommended I not be granted reinstatement to the Postal Inspection
15           Service. Another inspector, male, was granted reinstatement. I also learned that
             Morris received Citibank government travel card reports but never advised me my
16           card was in jeopardy of cancellation. This cancellation cost me a law enforcement
             position for approximately four months, and when returned to law enforcement
17           position a lower level. I also learned on December 12, 2005, that Morris was
             discussing actions concerning me with other male peers, but not with me.
18
19   Id., Ex. I. On April 21, 2006, the USPS notified Plaintiff that it was dismissing the Second

20   EEO Complaint as untimely, because it had not been filed within 15 calendar days of receipt

21   of the notice.  Id., Ex. J.[2]  Plaintiff alleges that the Second EEO Complaint was timely

22

23   _____

            [2] The Defendant apparently claims that Ms. Monohon received the Notice of Right to File
24   Individual Complaint on March 13, 2006, triggering the 15-day limit.  See Mot. to Dismiss,
     docket no. 15, at 5:23-26.  It is unclear what evidence, declaration, or document supports the
25   Defendant's claim.  The "date received" box on the Notice of Right to File Individual
     Complaint, apparently filled in by Ms. Monohon, appears to read "Mar 29 2006."  See Cohen
26   Decl., docket no. 16, Ex. H at 1.  The copy attached to the Cohen Declaration is unclear.  The
     form states that "you have the right to file a formal complaint within 15 calendar days of the date
     you receive this notice."  Id.

ORDER - 4

1  because a USPS dispute resolution specialist, Arlene Gordon, extended the deadline until

2  April 11, 2006.  First Am. Compl., docket no. 4, ¶ 4.8.[3]

3  ## DISCUSSION

4       Title VII provides a federal employee's exclusive remedy for employment

5  discrimination.  Brown v. General Services Administration, 425 U.S. 820, 835 (1976).

6  Before pursuing a discrimination claim in the courts, however, a federal employee must

7  exhaust his or her administrative remedies in accordance with the applicable statutory

8  provisions.  See id. at 833; see also 42 U.S.C. § 2000e.  To preserve the right to maintain

9  suit, the claimant must file a claim of discrimination with the agency in accordance with

10  published procedures.  See Leorna v. United States Dept. of State, 105 F.3d 548, 550 (9th

11  Cir. 1997); 29 C.F.R. § 1614.105(a).

12       The applicable regulations require consultation with an EEO counselor prior to filing

13  a complaint, in order to attempt to informally resolve the matter.  See Leorna, 105 F.3d 551.

14  The agency may dismiss a complaint that fails to comply with applicable time limits or that

15  raises a matter that has not been brought to the attention of a counselor.  Id.  The

16  jurisdictional scope of any court action depends on the scope of the EEOC charge and

17  investigation; the specific claims made in the district court must have been presented to the

18  EEOC.  Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003); see also Albano v. Schering-

19  Plough Corporation, 912 F.2d 384, 385 (9th Cir. 1990).  Where the question relates to the

20  Court's jurisdiction, the Court may consider facts and evidence outside the pleadings,

21  including agency records.  See, e.g., Augustine v. United States, 704 F.2d 1074, 1077 (9th

22  Cir. 1983).

23

24

---

25      [3] Plaintiff also alleges that she was not required to file a Second EEO Complaint because she was entitled to amend her original claim to include the claim for retaliation.  See First Am.

26  Compl., docket no. 4, ¶ 4.9.  A Motion to Amend the original claim to include the claim for retaliation was brought before the ALJ on January 19, 2006; no ruling had been issued by the ALJ at the time this action was filed.  Id. ¶ 4.11.

ORDER - 5

1    Plaintiff Monohon's First Amended Complaint explicitly raises two claims: sex

2  discrimination and retaliation.  See First Am. Compl., docket no. 4, at ¶¶ 5.2-5.4.  However,

3  the Complaint also raises various other claims by inference.  Plaintiff refers to her claim for

4  sex discrimination as a "hostile work environment based on sex," id. ¶ 4.1, and alleges she

5  was "constructively discharged from the position of Inspector in approximately March or

6  April, 2005."  See id. ¶ 4.15.  Defendant asks the Court to dismiss all of Plaintiff's claims,

7  except her claim for retaliation, which Defendant does not challenge at this time.

8  **1.     Hostile Work Environment (First EEO Complaint).**

9    Plaintiff contends that she "alleged a 'hostile work environment'" when she began the

10 EEO process by filing the informal complaint on October 26, 2004.  See First Am. Compl.,

11 docket no. 4, ¶ 4.17.  Plaintiff contends that she alleged a hostile work environment because

12 she sought as a "remedy" for her EEO complaint a "[f]ull investigation of discriminatory and

13 hostile work environment in the Seattle division."  Id. ¶ 4.18; see also Cohen Decl., docket

14 no. 16, Ex. C (informal complaint).  The Defendant contends Plaintiff failed to allege a

15 hostile work environment claim based on sex because the first EEO Complaint did not allege

16 *actions* that would constitute a hostile work environment.  The Defendant notes that the First

17 EEO Complaint referenced only events occurring on October 22, 2004.  See Cohen Decl.,

18 docket no. 16, Ex. C.  The Defendant contends that allegations of a single incident, even if

19 true, cannot support a Plaintiff's claim of a hostile work environment.

20    The Plaintiff claims that she alleged a hostile work environment when she asked for

21 an investigation of the hostile work environment in the Seattle division.  See id. at 1.

22 Plaintiff included her hostile work environment allegation in the portion of the form titled

23 "What Remedy Are You Seeking to Resolve this Complaint," rather than as part of the

24 "specific action(s)" that resulted in the allegations of discrimination.  Plaintiff did not

25 identify discriminatory actions that constituted a hostile work environment.  See id.  The

26 Postal Service did not include allegations of hostile work environment in its investigation:

The scope of the investigation will include the following issue only:

Specific Issue:  You alleged discrimination based on sex (Female), when on October 22, 2004, you were told to vacate your office and move to Division Headquarters.

* * *

If you do not agree with the defined accepted issue, you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter to the Sr. EEO Complaints Investigator . . .

Cohen Decl., docket no. 16, Ex. D (January 19, 2005 Kang Letter).  The Plaintiff did not challenge the scope of the investigation.

Nevertheless, the Court has jurisdiction over charges of discrimination that are "like or reasonably related to" allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations.  Leong, 347 F.3d at 1122 (citing Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)).  Under these circumstances, the Court cannot conclude that Plaintiff failed to exhaust her administrative remedies with regard to hostile work environment.  The First EEO Complaint raised questions regarding a hostile work environment.  In examining the proceedings before the EEOC, the Court construes the charge liberally.  Sosa, 920 F.2d at 1456.  In this case, the charge accepted for investigation was the event which triggered Plaintiff's EEOC Complaint: her transfer.  The scope of the Court's jurisdiction is not limited to the "actual" EEOC charge and investigation, but "can include the scope of an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Id. (internal quotations omitted).  An EEOC investigation of the charge in this case could reasonably have been expected to include an investigation of the hostile work environment alleged by Plaintiff, because the hostile work environment was cited in the pre-complaint counseling form and First EEO Complaint.  Although the hostile work environment claims were raised in relation to the remedy sought by the Plaintiff, the allegations in this litigation are sufficiently like or related to the events in the EEO complaint, charge, and investigation to be included within the scope of the Court's

ORDER - 7

jurisdiction.  Accordingly, the Motion to Dismiss the hostile work environment claim is DENIED.

**2.      Post-transfer Hostile Work Environment.**

The Defendant also asks the Court to dismiss the Plaintiff's allegations of hostile work environment for events that occurred after the filing of Plaintiff's First EEO Complaint. The Defendant urges that Plaintiff has not exhausted her administrative remedies with regard to her post-transfer claims because she did not file an EEO Complaint that encompassed this alleged hostile environment.  See Mot. to Dismiss, docket no. 15, at 8.  Plaintiff contends that she was not required to continue filing EEO complaints, after asking for an investigation of the hostile work environment in the Seattle division, because the individual events were part of an ongoing series of acts by her superiors:

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The "unlawful employment practice" therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative effect of individual acts.

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  The various events Plaintiff alleges occurred upon her transfer to the Seattle Division could be found to constitute a continuation of the same hostile work environment.  Although relocated to a new location, Plaintiff alleged the involvement of the same individuals, William Morris and Wanda Krueger, in an alleged ongoing hostile work environment.  Plaintiff's allegations of a continued hostile work environment are sufficiently like or related to the First EEO Complaint to be considered in this litigation.  Accordingly, the Motion to Dismiss the claim as it relates to the post-transfer hostile work environment is DENIED.

**3.      Constructive Discharge from the Inspection Service.**

Plaintiff's First Amended Complaint also contains the allegation that she was "constructively discharged from the position of Inspector in approximately March or April, 2005."  See First Am. Compl., docket no. 4, at ¶ 4.15.  To the extent Plaintiff raises a claim

1   for constructive discharge, the Defendant asks that it be dismissed for failure to exhaust

2   administrative remedies because Ms. Monohon did not file an EEO complaint related to

3   constructive discharge.  Ms. Monohon does not present any substantive argument in

4   opposition to the Defendant's Motion to Dismiss her allegation of constructive discharge.

5   Accordingly, the Defendant's Motion to Dismiss Plaintiff's constructive discharge claim is

6   GRANTED.

7   **4.      Disparate Treatment.**

8          Defendant argues that Plaintiff cannot assert a disparate treatment claim for the events

9   of October 22, 2004, because the mere "transfer of [P]laintiff's work location, without more,

10  does not raise (sic) to the level of an adverse employment action."  See Mot. to Dismiss,

11  docket no. 15, at 8 n.5.  However, Plaintiff does allege that after she was deprived of her role

12  as supervisor, office, and parking place, she was subjected to a continued hostile work

13  environment and constructively discharged.  See First Am. Compl., docket no. 4, ¶¶ 4.25,

14  4.31.  In light of the allegations in the Complaint, the Court rejects the Defendant's argument

15  that Plaintiff has not alleged an "adverse employment action."  Defendant's Motion to

16  Dismiss Plaintiff's disparate treatment claim is DENIED.

17  **5.      Second EEO Complaint.**

18         Defendant contends that Plaintiff's Second EEO Complaint was untimely.  Plaintiff's

19  Second EEO Complaint alleges that Plaintiff was retaliated against for engaging in protected

20  activity (i.e., the filing of the First EEO Complaint) and raises the question of further sex

21  discrimination.[4]  Defendant urges that it "does not, at this time, seek the dismissal of

22  [P]laintiff's retaliation claims," see Motion to Dismiss, docket no. 15, at 2 n.2, but later

23  seeks to dismiss the allegations contained in the Second EEO Complaint "[t]o the extent

24  _____

25         [4] The USPS dismissed the Second EEO Complaint as untimely.  Plaintiff alleges that her
    Second EEO Complaint was timely because she agreed to extend the EEO counseling process
26  by 30-days.  See id., Ex. K.  The Defendant asserts that the 30-day extension did not impact the
    deadline for Plaintiff's filing of a formal EEO complaint.  See Mot. to Dismiss, docket no. 15,
    at 11 n.8.

ORDER - 9

1    [P]laintiff does wish to pursue the gender discrimination claims . . . ."   <u>See</u> Mot. to Dismiss,

2    docket no. 15, at 10-11.  In essence, the Defendant seeks to dismiss that portion of the

3    Second EEO Complaint which relates to claims for sex discrimination.

4           Plaintiff argues that the confusing manner in which the Defendant has chosen to

5    attack the allegations contained in the Second EEO Complaint justifies the denial of the

6    motion.  <u>See</u> Response, docket no. 18, at 3.  Indeed, Plaintiff takes the risky step of declining

7    to respond to those arguments she finds confusing.  However, the Court finds that the

8    allegations of the Second EEO Complaint, to the extent they are dismissed on exhaustion

9    grounds, are inextricably intertwined with Ms. Monohon's allegations of retaliation.

10   Accordingly, the Court DENIES without prejudice the Motion to Dismiss, as it relates to the

11   allegations in the Second EEO Complaint.[5]

12   <u>C</u>ONCLUSION

13          The Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

14   The Motion is GRANTED as it relates to the constructive discharge claim and DENIED as to

15   all remaining claims.

16          IT IS SO ORDERED.

17          DATED this 14th day of February, 2007.

18

19                                                    /s Thomas S. Zilly

20                                            _____

21                                            Thomas S. Zilly
                                             United States District Judge

22

23

24

     _____

25          [5] In any event, the Defendant fails to establish that the Second EEO Complaint was
     untimely.  No evidence in the record establishes when Ms. Monohon received the Notice, <u>see</u>
26   Cohen Decl., docket no. 16, Ex. H, except the date at the bottom, which appears to be March
     29, 2006.  <u>See</u> <u>id.</u>